UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA COOPER,<br>    Plaintiff,<br><br>vs.<br><br>INDIANAPOLIS WATER COMPANY,<br>U.S. FILTER d/b/a VEOLIA,<br>    Defendant. | 1:05-cv-1375-LJM-WTL |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Lisa Cooper ("Cooper"), filed this action under 42 U.S.C. § 2000 against her former employer, the Indianapolis Water Company, U.S. Filter d/b/a Veolia ("Defendant"), alleging gender discrimination and hostile work environment. This matter comes before the Court on Defendant's Motion for Summary Judgment. For the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### I. BACKGROUND

#### A. EMPLOYMENT HISTORY

Defendant provides water purification services, including water treatment and waste water treatment, in the Indianapolis area. Guthrie Aff. ¶ 4. Defendant hired Cooper as a laborer in either April 2000, or April 2002, under the terms of a collective bargaining agreement ("CBA") between Defendant and the Local 131 Boiler and Pipe Fitters Union (the "Union"). Cooper Dep. at 47, 51; Cooper Aff. ¶ 2.

Defendant has adopted a policy against workplace discrimination and harassment that is published in Defendant's employee handbook. Guthrie Aff. ¶ 6. Defendant has also established a Compliance Hotline, operated by an outside, independent service, for anonymous reporting of "suspected or actual unethical or illegal business activities involving [Defendant]." *Id.* ¶ 6-7 & Ex. 1. Cooper received the employee handbook, but did not read the policy against workplace discrimination and harassment and was unaware of the existence of the Compliance Hotline. Cooper Dep. at 133-34.

During the period in which she was employed as a laborer, Cooper alleges that she informed the Union on several occasions that she did not receive adequate training on a leak truck, but does not recall when she spoke to the Union regarding this matter. *Id.* at 99-100. After speaking with several union individuals regarding her training concerns, Cooper was told by Chris Burton ("Burton"), a union shop steward, that she would be trained on the leak truck after another employee completed the training. *Id.* Cooper subsequently received some training on the leak truck, which she described as "sporadic." *Id.* at 102.

In 2003, Cooper bid for and was awarded the position of a systems inspector, also called a locator. Cooper Dep. at 112; Guthrie Aff. ¶ 5. At the time of Cooper's termination, she was employed by Defendant in the capacity of locator, a position she had held for approximately thirteen or fourteen months prior to her termination. Cooper Dep. at 53. Robert Guthrie ("Guthrie"), Field Service Supervisor Inspections, was Cooper's supervisor at the time of her termination. *Id.* at 54; Guthrie Dep. at 19, 22. As her supervisor, Guthrie found Cooper's job performance to be satisfactory and stated that she "did a fairly good job." Guthrie Dep. at 22. Cooper stated that she received satisfactory job performance evaluations and merit raises each year. Cooper Aff. ¶ 3.

Cooper alleges that, at an unknown date and time, Guthrie told her that she was not permitted to use the restroom in the women's locker room after the daily work shift commenced at 7:30 a.m. *Id.* at 95-96. Cooper had allegedly been late in starting her shifts and Guthrie had reported this to the Union. *Id.* at 85-86. Cooper alleges that male co-workers frequently returned to the building after 7:30 a.m. to use the men's restroom and that Guthrie told the male employees to "hurry up." *Id.* at 96. Guthrie did not discipline Cooper for using the restroom at any time and Cooper did not file a grievance regarding the alleged limits on Cooper's restroom usage. *Id.* at 97; Guthrie Dep. at 22.

### B.  EVENTS GIVING RISE TO COOPER'S TERMINATION

On November 19, 2004, Cooper received a Utility Locate Work Order (the "Order"), requiring her to locate and mark a twenty inch high profile main located at 102nd Street and Allisonville Road (the "Location"). *Id.* at 161, 165, & Ex. 9. On November 19, 2004, Cooper marked a twenty inch high profile main with blue lines and a flag, but could not locate one of the mains covered by the Order. *Id.* at 173. Cooper wrote on the Order the work that she had actually completed and indicated that she would return to the Location on Monday, November 22, 2004, after obtaining prints for the area to help complete the Order. Cooper Aff. ¶ 8. On the Order, under the column entitled "Date Completed," Cooper wrote "11-19-04" and signed the Order. Cooper Dep. at 166-68 & Ex. 9; Guthrie Dep. at 28. Cooper then turned the Order in to the appropriate Utility Locate Work Order box. Cooper Dep. at 166-68.

The parties dispute the significance of submitting the Order in the Utility Locate Work Order box. Cooper alleges that she was required to turn orders in at the end of each work day, regardless

of whether the work itself was completed. Cooper Aff. ¶ 18. The parties disagree as to whether Cooper was informed that if an order is not fully completed the locators are required to notify a supervisor or the contractor involved. *Id.* ¶ 19; Guthrie Aff. ¶ 12. Defendant contends that placing an order in the Utility Locate Work Order box at the end of a shift means that the work itself has been completed by the employee and that locators do not turn in orders unless the work has been completed. Guthrie Aff. ¶ 13-14. Further, Defendant contends that completing the Order column entitled "Date Completed" means that the work order itself has been completed by the locator. Guthrie Dep. at 66. Cooper contends that completing the "Date Completed" column means that the *form* was completed on a particular date, rather than that the work itself was completed on that date. Cooper Aff. ¶ 20.

On November 22, 2004, Cooper went back to the Location to complete the Order, but was instructed by Guthrie to go to a different work site. Cooper Dep. at 165-66. Cooper did not tell Guthrie that the work required under the Order was not completed on November 22, 2004. *Id.* at 204.

On November 26, 2004, Monroe Corporation ("Monroe"), a contractor, "hit" a main at the Location. *Id.* at 183; Guthrie Aff. ¶ 15. During a pre-work meeting on Monday, November 29, 2004, Guthrie informed Cooper about the damaged main and advised her of a meeting scheduled with Monroe later that morning to discuss the accident. Cooper Dep. at 183-84; Guthrie Aff. ¶ 16. Guthrie alleges that he set the meeting for 11:00 a.m. that day and ordered Cooper to attend. Guthrie Aff. ¶ 17.

While traveling to complete another Utility Locate Work Order that day, Cooper passed by the Location to observe the damage. Cooper Dep. at 185; Cooper Aff. ¶ 12. Cooper met Doug

Sponsil ("Sponsil"), a supervisor employed by Defendant, at the Location and Sponsil instructed Cooper to mark the main. Cooper Aff. ¶ 13-14; Cooper Dep. at 185-86. Cooper informed Sponsil that she was unable to mark the main because she could not get a "trace" on it. Cooper Dep. at 186. Sponsil allegedly advised Cooper of where to mark the main because he had laid the line and Cooper marked the main accordingly. *Id.*

Prior to the 11:00 a.m. meeting with Monroe, Guthrie asked Cooper whether the marks and flags at the Location were Cooper's marks and flags. *Id.* at 197; Cooper Aff. ¶ 16. Cooper said that they were her marks and flags. Cooper Dep. at 197; Cooper Aff. ¶ 16. Cooper stated that Guthrie never asked her whether she had *just* made the marks and never asked *when* the marks were made. Cooper Dep. at 197; Cooper Aff. ¶ 17. Cooper testified that she made some marks at the Location prior to November 29, 2004, and some marks on November 29, 2004, at the instruction of Sponsil. Cooper Dep. at 197.

On November 30, 2004, Guthrie requested that Cooper summarize in writing the details involving her marking the main at the Location. *Id.* at 192. The parties dispute the facts with respect to the writing of the summary. Cooper contends that she refused to write the summary because she wanted to review the original Order to refresh her memory of the events. *Id.* at 192-93. Cooper also alleges that Guthrie told her, at first, that the Order was lost and later that the Order had never been submitted. *Id.* at 193. In contrast, Guthrie stated:

> After the fact I asked [Cooper] to write a summary and she refused. She told me no, I'm not writing a summary. She actually told me no, and I said excuse me? She said I'm not writing a summary. She said if you want to know what I did, read my [Order].

Guthrie Dep. at 28. Cooper subsequently prepared a statement indicating, "[I] don't recall 100% what I did. The Company should pull the original to see job completed. I did many locates since that

5

locate. Turned original into Robert Guthrie." Cooper Dep. at 194 & Ex. 12. Cooper testified that she prepared this statement exactly as instructed by the Union president, Bobby Reed. Cooper Dep. at 194-95.

On December 2, 2004, Defendant suspended Cooper indefinitely, without pay, pending further investigation by Defendant. *Id.* at 211-12 & Ex. 15. During the investigation, Defendant obtained a statement, dated December 2, 2004, from Monroe indicating:

> On Monday November 29, 2004[,] a meeting between Indpls. Water Co. Investigator and Monroe Corp. employees and [Cooper] where [sic] on site. The investigator ask[ed] the locator if the locate marks that are showing on the ground Monday were there on the ground Friday when the Monroe Corp. employees bored and damaged Indpls. Water Co. lines. [Cooper's] response was that they were there on Friday November 26, 2004[,] the day the water line was bored. That was a false statement–the locate marks were <u>not</u> there on Friday.
>
> It can be proven by (4) Monroe Corp. employees and an emergency employee of Indpls. Water Co. (first name Keith) and by an SMP Locator.

Guthrie Aff. ¶ 23 & Ex. 2. The investigation also yielded the following statement, dated December 7, 2004, from Keith Legge ("Legge"), one of Defendant's employees:

> On 11/26/04 at approx 3:00 pm, I received a call from Cust Service Dispatch, that a contractor had hit something of our[s] while boring . . . I went to [the Location]. When I arrived I noticed that the main running N and S was marked. I noticed water coming out of a valve box that was not marked or painted.
>
> Myself and the contractor walked around trying to figure out what this valve ran to, there were no marks. . . . On 12/1/04 myself, [and Guthrie] met with Steve Stein at 3:30 pm at [the Location and Guthrie] show[ed] me some marks on the 12" main which I informed him was [sic] not there on 11/26/04.

Guthrie Aff. ¶ 24 & Ex. 3. Guthrie additionally found fresh paint on the ground when he arrived at the Location on November 29, 2004. Guthrie Dep. at 33.

On December 9, 2004, a meeting was held during which Defendant terminated Cooper's employment. Cooper Dep. at 212-14. Defendant terminated Cooper for a violation of Section 17 -

6

A-3 of the CBA regarding, "Falsifying operational records; Improper recording of own work or time record or that of a fellow employee." Guthrie Dep. at 51 & Ex. 3. A memorandum to Cooper from Paul Dickens, dated December 8, 2004, described the investigation findings and stated, in pertinent part:

> In these findings it was determined that you made false statements by stating that you completed the work on November 19 and documented that you needed to go back on November 22nd for further work, which you failed to do.
>
> It was also determined that you refused an on [Location] meet with your supervisor at the requested time because of your workload and you did not notify your supervisor that you were going to the [Location] prior to the scheduled meet. Your supervisor arrived at the [Location] for the meet and determined that you had already been there and marked the job site without a proper locate ticket and without your supervisor[']s approval. When you were questioned of the incident and requested to submit in writing your version of the incident, you first refused and after a second request you turned in a statement that was borderline insubordinate.
>
> Violations of a rule in this section are cause for immediate dismissal.

*Id.* at 51-52 & Ex. 3.

Following termination, on January 27, 2005, Cooper filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See* Cooper Dep. at 220, Ex. 20. Cooper subsequently filed this suit against Defendant pursuant to 42. U.S.C. § 2000, alleging gender discrimination and hostile work environment. Specifically, Cooper alleges that she (1) was treated less favorably than male employees by Guthrie, (2) was chastised for taking restroom breaks and being slow to gather her work materials, while similarly situated male employees were not similarly harassed, (3) received inadequate training on a leak truck and such treatment was less favorable than training received by male employees, and (4) was terminated for falsification of a document, but male employees who engaged in similar falsification of documents were not terminated.

## II. **SUMMARY JUDGMENT STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56(c), summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III.  DISCUSSION

Cooper relies on the familiar three-part burden-shifting test outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), to survive summary judgment. Under *McDonnell Douglas* a plaintiff first must prove a prima facie case by "demonstrat[ing] that 1) she was a member of a protected class, 2) she was meeting her employer's legitimate business expectations, 3) she suffered an adverse employment action, and 4) her employer treated similarly situated employees outside of the class more favorably." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). If she establishes this prima facie case the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Once an employer presents such a reason, the burden then shifts back to the plaintiff to show that the

employer's "stated reason for respondent's rejection was in fact pretext." *Id.* at 804. The discrimination alleged must be intentional, thus "the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate." *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 458 (7th Cir. 1999). However, to survive summary judgment, "the non-moving party, in this case the plaintiff . . . must only produce evidence from which a rational factfinder could infer that the company lied about its proffered reason for [her] dismissal." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994). *See also Mills*, 171 F.3d at 458. Pretext can be established with a showing that the reason articulated is unworthy of credence. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888 (7th Cir. 2001). A plaintiff may also establish pretext by providing "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the [adverse employment action] in question, or were insufficient to motivate the [adverse employment action]." *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996).

Cooper must satisfy the three-part *McDonnell Douglas* test to survive summary judgment.

### A.  FAILURE TO TRAIN & HOSTILE WORK ENVIRONMENT CLAIMS

Cooper appears to allege that the Defendant violated her rights by (1) failing to adequately train her on a leak truck, (2) subjecting her to a hostile work environment, and (3) suspending and terminating her based on her gender. Defendant argues that summary judgment should be granted for all of the claims advanced in Cooper's Complaint. However, Cooper only responds to the claim alleging gender-motivated suspension and termination. Cooper did not attempt to answer Defendant's Motion for Summary Judgment with respect to her claims that Defendant failed to

adequately train Cooper on the leak truck and that Defendant subjected her to a hostile work environment (the "Unanswered Claims").

The "only effect of a non-movant's failure to respond to a motion for summary judgment is that it constitutes an admission by the non-movant that there are no disputed issues of genuine fact warranting a trial; it does not constitute a waiver by the non-moving party of all legal arguments based upon those undisputed facts." *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). Therefore, the Unanswered Claims are not waived, rather summary judgment is proper if the undisputed facts show that Defendant is entitled to judgment as a matter of law on those claims.

### 1. Training on the Leak Truck

First, Defendant asserts that Cooper's claim that it discriminated against her when it failed to train her on the leak truck is time barred. In order to satisfy the time limitations under Title VII, an employee must file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e). Moreover, a plaintiff may not bring claims under Title VII that were not originally included in the charges made to the EEOC. *See Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003); *see also McKenzie v. Ill. Dep't of Transp.*, 93 F.3d 473, 483 (7th Cir. 1996) (providing that discriminatory acts that occurred before filing of the EEOC charge but were omitted from the charge could not be included in the complaint).

The Court agrees with Defendant that Cooper never timely presented her allegations regarding Defendant's failure to train her on the leak truck to the EEOC. *See* Cooper Dep. at 220, Ex. 20. Cooper does not recall when she alerted the union that she had not received adequate training on the leak truck. Cooper Dep. at 99-100. However, Cooper admits that the union shop

steward agreed to train her on the leak truck after another employee completed the training, that she did subsequently receive some training, and that she voluntarily bid out of this position sometime in 2003 in order to become a locator. *Id.* at 100-02, 111-12. Moreover, Cooper filed a charge of discrimination with the EEOC on January 27, 2005, well past the statutory time limit for reporting an incident that occurred sometime prior to the time in 2003 when Cooper became a locator. *See* Cooper Dep. at 111-12, 220, Ex. 20.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to any allegation of discrimination based on Defendant's alleged failure to adequately train Cooper on the leak truck.

### 2. Hostile Work Environment

Next, Defendant challenges Cooper's ability to establish the prima facie case of her hostile work environment claim. To establish a prima facie case of hostile work environment because of sexual harassment,

> a plaintiff must demonstrate that: (1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on sex; (3) 'the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff;' and (4) there is a basis for employer liability.

*Robinson v. Sappington*, 351 F.3d 317, 328-29 (7th Cir. 2003) (quoting *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)).

Cooper alleges in her Complaint that Guthrie chastised her for taking restroom breaks and for being slow in gathering her equipment presumably because of her gender. However, Cooper has

12

failed to provide facts from which the Court can infer that these actions were motivated by her gender. In assessing whether discrimination is "because of sex" the inquiry is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring). Cooper acknowledges that Guthrie also told male employees to "hurry up" when using the restroom so that they would not be late for the commencement of their shifts. Cooper Dep. at 95-96, 244-45. In other words, Guthrie chastised all employees, regardless of their gender, for their failure to be on the job site at, and after, the start of the 7:30 a.m. shift because they were taking restroom breaks. Guthrie Aff. ¶ 20. Furthermore, Cooper offers no evidence that Guthrie either permitted men to be slow in gathering their equipment or failed to chastise men when they were slow in gathering their equipment, but singled her out for the same problem. Cooper further admitted at her deposition that she was never disciplined or terminated for using the restroom, and that she did use the restroom after 7:30 a.m. if she needed to do so. *Id.* at 97. Therefore, Cooper cannot meet the critical threshold requirement that such workplace treatment was "because of" her gender. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Cooper's claim of hostile environment sexual harassment.

### B. GENDER DISCRIMINATION CLAIM

Cooper contends that Defendant discriminated against her when Guthrie chastised Cooper for taking restroom breaks and for being slow in gathering her work equipment while treating male employees more favorably, and when Defendant suspended and terminated her for falsification of documents while other male employees who engaged in such conduct were not similarly disciplined.

13

To establish a prima facie case of gender discrimination on indirect evidence, Cooper must show that (1) she was a member of a protected class; (2) her performance met the legitimate expectations of Defendant; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of Cooper's protected class received more favorable treatment from Defendant than Cooper. *See Kampmier*, 472 F.3d at 939. The Court finds that Cooper easily satisfies the first and third elements of her prima facie case. As a female, Cooper is a member of a protected class. Cooper suffered an adverse employment action when Defendant suspended her and subsequently terminated her employment. The Court concludes, however, that Cooper cannot satisfy either the second or fourth elements.

Cooper argues that she can satisfy the second element, whether Cooper's performance met Defendant's legitimate expectations, because she previously received satisfactory performance evaluations from Defendant and that she received merit raises. *See* Cooper Aff. ¶ 3. Furthermore, Cooper correctly notes that her supervisor, Guthrie, testified that Cooper's performance was satisfactory and that she did a "fairly good job." *See* Guthrie Dep. at 22. The proper inquiry, however, is "not whether at *any* time in [Cooper's] employment [s]he was meeting [her] employer's expectations; the question is whether [s]he was meeting [her] employer's expectations at the time [s]he was terminated." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545-46 (7th Cir. 2002) (emphasis added) (finding that an employee was not meeting an employer's legitimate expectations at the time of termination when, despite having previously received satisfactory performance evaluations, he used equipment without permission and failed to properly document certain work activity).

Taking the disputed facts about the significance of completion of the work Order in Cooper's favor, Cooper cannot establish that she was meeting the legitimate performance expectations of Defendant at the time of her discharge. The thrust of Cooper's argument is that she was terminated for falsification of a document that she claims she did not falsify, and because she did not falsify the document, she *necessarily* was meeting the legitimate expectations of her employer.

Cooper stated that she wrote on the Order that she would return to the Location on November 22, 2004, to complete the required work. Cooper Aff. ¶ 8. She claims she returned to the Location on November 22, 2004, never got out of her truck, and was called away by Guthrie to another site. *Id.* at ¶ 9; Cooper Dep. at 165-66. Cooper stated that when Guthrie called her away, they did not discuss why she was returning to the Location. Cooper Dep. at 182. Cooper further stated that she did not inform or notify anyone that the Location work had still not been completed. *Id.* at 204.

In addition to Cooper's failure to inform Guthrie of the status of the uncompleted Order on November 22, 2004, Cooper had the opportunity to return to the Location to complete the required work on subsequent work days. Cooper failed to return to the Location on any of the next four work days, November 23-26, 2004. Ultimately, Cooper's failure to disclose the uncompleted status of the Order and her failure to return to the Location to complete the job contributed to the water main being "hit" on November 26, 2004. *See Id.* at 183; Guthrie Aff. ¶ 15. Thus, regardless of the significance attached to the actual signing of the Order or its placement in the Utility Locate Work Order box at the end of the work day, Cooper represented to Defendant on the Order that she would return to the Location on November 22, 2004, to complete the work. She subsequently failed to do so on November 22, 2004, or on any subsequent date, and failed to inform anyone of the Order's

15

uncompleted status. Based on these failures, Cooper was not meeting Defendant's legitimate performance expectations at the time of suspension and termination.

Additionally, Cooper failed to cooperate with Defendant in investigating the circumstances surrounding the main accident, including her failure to fully disclose the details surrounding her return to the Location to make additional markings at the Location post-accident. *See* Guthrie Dep. at 28; Cooper Dep. at 192-93. Cooper was asked by Guthrie on November 30, 2004, to write a description of the events surrounding the main accident and she refused to do so. Cooper Dep. at 193; Guthrie Dep. at 28. On December 2, 2004, Cooper wrote a formal statement pursuant to the instructions of her union president, indicating, "[I] don't recall 100% what I did. The Company should pull original to see job completed. I did many locates since that locate. Turned original into Robert Guthrie." Cooper Dep. at 194-95 & Ex. 12. Thus, Cooper's failure to fully describe and explain the circumstances leading up to and following the main accident provides further evidence that Cooper was not meeting Defendant's legitimate performance expectations at the time of termination.

Cooper also fails to evidence a material question of fact that similarly situated male employees received more favorable treatment than Cooper. Specifically, Cooper alleges that Guthrie chastised her for taking restroom breaks and for being slow in gathering her work equipment while treating male employees more favorably. Futhermore, Cooper alleges that Defendant suspended and terminated her for falsification of documents while male employees who engaged in such conduct were not similarly disciplined.

The Court has already concluded that the undisputed facts show that Guthrie treated all employees the same with respect to bathroom breaks and being slow to gather their equipment

regardless of gender. Therefore, Cooper's argument that Defendant discriminated against her because of her gender when Guthrie chastised her for breaks and being slow is without merit.

With respect to her other theory of liability, to determine "whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). In cases in which one employee claims to have been disciplined "more harshly than a similarly situated employee based on some prohibited reason-a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Id.* Critical considerations include whether the employees dealt with the same supervisor, were subject to the same standards, and "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617-18. Cooper must show "substantial similarity" to the employees treated more favorably. *Id.* at 618. A plaintiff must show that the employees treated more favorably are "directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

With respect to Cooper's claim that she was suspended and terminated for falsification of documents while male employees who engaged in such conduct were not similarly disciplined, Cooper alleges that two of Defendant's employees, David Durr ("Durr") and Ashley Blair ("Blair"), engaged in falsification of documents, but unlike Cooper, they were not terminated. Cooper contends that because both Defendant's Chief Operations Officer, David Gadis, and legal counsel, Tom Zabor, were involved at some level in the discipline of herself and these two employees, there exists a commonality of decision-maker. *See* Gadis Dep. at 9-13. But similarity with respect to this one factor is not enough; the Court must consider all of the relevant factors including the employees'

17

positions, departments, direct supervisors, and particular work rule violations. The complete analysis compels a conclusion that Durr and Blair are not similarly situated to Cooper.

Durr and Cooper did not have the same supervisor and did not work in the same department. Durr was employed in a warehouse in the Shared Services department and was disciplined by Vicky Anderson, the warehouse manager. Anderson Aff. ¶ 1, 4-5, Ex. 1. In contrast, Cooper was employed as a locator in the Field Services department and was disciplined by Paul Dicken, Director of Field Services. Cooper Dep. at 212, Ex. 16. The Seventh Circuit has repeatedly identified that the fact that employees were disciplined by different supervisors is a strong indicator that employees are not similarly situated. *See Radue*, 219 F.3d at 618 ("Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently.").

Further, while Durr and Cooper were both disciplined for violations of Section 17-A-3 of the CBA, involving "falsifying operational records," they were both disciplined for a variety of other violations as well. Specifically, Durr was suspended without pay for "leaving his work area without returning for the day," triggering numerous violations of the CBA governing proper procedures for obtaining permission to depart from the work area. Anderson Aff. ¶ 2-3, Ex. 1. In addition to violating Section 17-A-3 of the CBA, Cooper, by contrast, was terminated for the following:

> It was also determined that you refused an on [Location] meet with your supervisor at the requested time because of your workload and you did not notify your supervisor that you were going to the [Location] prior to the scheduled meet. Your supervisor arrived at the [Location] for the meet and determined that you had already been there and marked the job site without a proper locate ticket and without your supervisors approval. When you were questioned of the incident and requested to submit in writing your version of the incident, you first refused and after a second request you turned in a statement that was borderline insubordinate.

Cooper Dep. at 212, Ex. 16. Thus, not only did Durr and Cooper have different supervisors, but they were also disciplined for different violations. As such, Durr and Cooper are not "directly comparable" in "all material respects" and are not similarly situated employees for purposes of prong four of Cooper's prima facie case.

The same conclusion is required with respect to Cooper's claim that Blair and Cooper are similarly situated employees. Blair was first disciplined by William Curtis, Assistant Director of Distribution, for a violation of the CBA prohibiting "[p]ossessing, using or being under the influence of intoxicating substance while on duty, on company premises, or in company vehicles." Curtis Aff. ¶ 2-3, Ex. 1. Defendant waived Blair's suspension without pay, but the offense remained on record. *Id.* Blair subsequently received another disciplinary action from Richard Everman, Supervisor of System Inspection, for a violation of the CBA concerning "[s]ubstandard work resulting in waste of materials, time, or money." Curtis Aff. ¶ 5, Ex. 2. Blair's discipline that time resulted from his negligent failure to inform a supervisor of his difficulty in marking a main that resulted in damage to the main. *Id.* The two instances of conduct for which Blair was disciplined, drinking a beer while on the job and negligently failing to inform a supervisor of difficulty in marking a main, were substantially different from Cooper's conduct, which involved falsification of operational records. Clearly Cooper and Blair were not similarly situated in all material respects.

Finally, the Court finds no merit in the argument that Cooper is similarly situated to other non-terminated employees who have mis-marked mains causing damage. The evidence indicates that Cooper was not terminated for mis-marking a main, but was terminated for falsification of operational records and a variety of other reasons stemming from such falsification. *See* Cooper Dep. at 212, Ex. 16; Guthrie Dep. at 26.

For those reasons, Cooper has not established a prima facie case of gender discrimination and Defendant's Motion for Summary Judgment on that claim must be **GRANTED**.

### IV. CONCLUSION

For the foregoing reasons, Defendant's, Indianapolis Water Company, U.S. Filter d/b/a Veolia, Motion for Summary Judgment is **GRANTED**.

IT IS SO ORDERED this 30th day of November, 2007.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com

Brian L. McDermott
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.mcdermott@odnss.com

Steve Shoup
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
steve.shoup@odnss.com